19262

John W. DOUGLAS, Jr., Respondent, v. MEDICAL INVESTORS, INC., Appellant.

(182 S. E. (2d) 720)

*Messrs, Wyche, Burgess, Freeman & Parham, P. A.,* of Greenville, *for Defendant-Appellant,*

*Messrs. Love, Thornton, Arnold & Thomason,* of Greenville, *for Plaintiff-Respondent,*

July 30, 1971.

Lewis, Justice.

This is an action for declaratory judgment in which the parties seek a determination of whether defendant-appellant, Medical Investors, Inc., has an easement for a driveway across plaintiff-respondent's property. The right of appellant to the easement depends upon the validity of a reservation in a deed by its perdecessor in title and, whether, if valid, the easement reserved was transferable. The latter depends upon the character of the easement involved. The appeal is from an order of the lower court holding that the reservation of the easement was ineffective to create any transferable interest in the driveway in question.

Appellant's predecessor in title, L. H. McCalla, owned an L-shaped lot of land in Greenville, South Carolina, which fronted on Calhoun and Pendleton Streets. It fronted 50 feet on Pendleton, extending back threfrom a distance of 195 feet; and fronted 45 feet on Calhoun Street, extending back from it 162 feet. The intersection of the two streets was about 112 feet from the nearest property line on Pendleton and 150 feet from that on Calhoun. The area lying between the L-shaped lot of McCalla and the intersection was owned by others.

The record conclusively shows that the lots in the particular area in question were used for commercial purposes.

In 1955, L. H. McCalla sold to James N. Threadgill the entire frontage of his property (45 feet) on Calhoun Street to a depth of 75 feet, which left the remainder of the McCalla property still in somewhat of an L-shape with only a frontage on Pendleton Street. McCalla's remaining lot measured 50

feet in width for a distance of 125 feet from Pendleton and then widened to approximately 80 feet for the remainder of its depth. The rear of the remainder of the McCalla property was then 195 feet from Pendleton Street, on which it fronted, and only 75 feet from Calhoun Street across the lot being sold to Threadgill.

Under the foregoing situation, McCalla reserved, in the deed to Threadgill, an easement over the lot conveyed for a joint driveway 18 feet in width from Calhoun Street to his remaining property, in the following language:

"The grantor herein reserves unto himself, his heirs and assigns, an easement or right-of-way over and across a strip of land, eighteen feet in width at all points, lying along the northern side of the lot above described and adjacent to the above mentioned property now or formerly of Whitworth and Wyatt. Said strip is reserved for use by the grantor, his heirs and assigns as a driveway leading to the grantor's adjacent property, immediately to the west of the lot above described, and the easement herein reserved shall run with the grantor's said adjacent property and shall be appurtenant thereto. Nothing herein shall be construed, however, so as to prevent the use of said strip of land, for driveway purposes, by the grantee herein, his heirs and assigns, or by his invitees on the premises; it being the intention hereof that said strip of land shall remain open as a joint driveway to serve the above described property and the adjacent property of the grantor."

Threadgill, grantee in the foregoing deed, conveyed to the respondent, Douglas, in 1956, the lot acquired from McCalla, and the deed contained the following recital:

"The above described property being the same conveyed to me by deed recorded in the R. M. C. office for Greenville County in Deed Book, 524, at page 279, *and this conveyance is made subject to the 18-foot joint driveway referred to in said deed.*" (Emphasis added.)

McCalla conveyed to appellant, in 1966, the remainder of his property, including his interest in the driveway over

respondent's property, as reserved in his 1955 deed to Theadgill.

Therefore, respondent now owns the lot of land over which the easement for the driveway was reserved; and appellant owns the property, for the benefit of which the easement was created, each respectively holding subject to such burdens or rights as arose under the original reservation of the easement.

The first question concerns the contention that the reservation of the easement in the deed from McCalla to Treadgill is repugnant to the fee simple title granted and is therefore, ineffective.

The reservation of the easement in question followed the description in the deed. Both the granting and habendum clauses conveyed a fee simple title without mention of reservation of the easement. The lower court sustained respondent's contention that the reservation was inconsistent with the fee simple title previously granted, and was therefore invalid, under the well established principle that when the granting clause in a deed conveys a fee simple title it cannot be reduced or cut down by subsequent language in the instrument. In so holding, the lower court was in error.

"An easement is a right which one person has to use the land of another for a specific purpose." *Steele v. Williams,* 204 S. C. 124, 28 S. E. (2d) 644; and "gives no title to the land on which the servitude is imposed," *Morris v. Townsend,* 253 S. C. 628, 172 S. E. (2d) 819. An easement is therefore not an estate in lands in the usual sense.

We have recognized that an easement may be created by reservation in a deed. *Sandy Island Corp. v. Ragsdale,* 246 S. C. 414, 143 S. E. (2d) 803.

The easement in this case did not create an estate in the lands affected but only reserved a joint right to use the driveway. It in no way cut down the fee simple estate conveyed. Therefore, the reservation of the easement following

the description in the deed was not repugnant to the fee simple title conveyed in the granting clause.

Certainly, the intent of the parties, as gathered from the entire deed, was to reserve an easement for a driveway across the property conveyed. We find no settled rule of law which would prohibit giving effect to the intent of the parties.

Respondent cites and strongly relies upon the cases of *Groce v. Southern Rwy. Co.,* 164 S. C. 427, 162 S. E. 425, and *Stylecraft, Inc. v. Thomas,* 250 S. C. 495, 159 S. E. (2d) 46, as authority for the proposition that the reservation of the easement in this case following the description is repugnant to the fee conveyed in the granting clause. In both cases, the granting clause created a fee simple estate in the grantee. In *Groce,* the habendum attempted to limit the use of the lands to "railroad purposes" and, in *Stylecraft,* the deed contained a provision following the description which attempted to limit the use of the lot conveyed to "school purposes". The court held in both cases that the limitations upon the use of the property conveyed were ineffectual under the established rule that where the granting clause in a deed conveys a fee simple title that estate may not be cut down by subsequent words in the same instrument.

The foregoing cases are clearly distinguishable. The attempt to limit the use of the property conveyed to "railroad purposes" and "school purposes" amounted to a reservation of the very rights granted in fee simple. These limitations, in effect, attempt to create a reversion of the title upon failure to use the land for the limited purpose. This was an attempt to take back part of the estate previously conveyed in the granting clause, and was accordingly held void. No such situation exists in connection with the easement here reserved. The fee simple estate granted remained in the grantee. Only the right to jointly use the driveway was reserved. This was not repugnant to the conveyance of the fee within the meaning of the rule applied in *Groce* and *Stylecraft.*

While others are argued, the only other question which we need consider involves the nature of the easement reserved. If it were an easement in gross, it would not be transferable and appellant, as transferee, would have no right to use the driveway. If it were either an easement in gross of a commercial character or an easement appurtenant it would be transferable and appellant would now have the right to use of the driveway in connection with its property.

We think the evidence conclusively shows that the easement was one in gross for commercial purposes and, as such, was transferable. *Sandy Island Corp. v. Ragsdale, supra,* 246 S. C. 414, 143 S. E. (2d) 803.

While it is true, as contended by respondent, that the instrument creating the easement does not show on its face, as in the *Sandy Island* case, that the easement was in gross for commercial purposes, the evidence conclusively shows such fact. The property was in a commercial area, was used for that purpose, and the driveway in question has been used exclusively for commercial purposes since its creation.

Respondent argues, however, that parole evidence as to the nature of the easement was inadmissible, should be disregarded, and the character of the easement determined solely from the wording of the instrument. The decision in *Sandy Island Corp. v. Ragsdale, supra,* is cited to sustain the contention. The fallacy in respondent's argument lies in the fact that, unlike the instrument in Sandy Island, the wording of the present reservation leaves the exact character of the easement in doubt.

The grantor, in the present deed, "reserves unto himself, his heirs and assigns, an easement or right-of-way" and it is specifically stated that "the easement herein reserved shall run with the grantor's adjacent property and shall be appurtenant thereto." The language used, considered alone, did not create an easement in gross. And, under the holding in *Steele v. Williams, supra,* 204 S. C. 124, 28 S. E. (2d) 644,

such language could not create an easement appurtenant to land, if the easement, in fact, was not appurtenant. There exists doubt as to the presence of all the elements necessary to constitute an easement appurtenant.

We are therefore presented with a situation where it is impossible to determine the nature or character of the easement from the language used in the reservation. Under such circumstances, parole evidence was properly considered in determining the character of the easement reserved. 30 Am. Jur. (2d), Evidence, Section 1069; 25 Am. Jur. (2d), Easements and Licenses, Section 75; Annotation: 61 A. L. R. (2d) 1390, 1397.

Paraphrasing the holding in Sandy Island, it is our conclusion that the reservation made in the deed of McCalla to Threadgill created an easement in gross of a commercial character and the fact that the instrument creating such easement reserved the rights in question to McCalla, "his heirs and assigns," to run with the land and be appurtenant thereto, shows an intention to attach the attribute of assignability to the easement. It follows that McCalla had the right to assign the easement to the appellant.

The judgment is accordingly reversed and the cause remanded to the lower court for entry of judgment in favor of appellant in accordance with the foregoing views.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.